Edwards, Ch. J.
delivered the following opinion of the court:
After staling the grounds upon -which the inferior court founded their judgment, it contained the following observation : “ Attention to dates, will readily correct the error into which that court was probably led by the proof of the notoriety of Scott’s spring, long,after the date of the entry.”
It then noticed the depositions, as above stated, which speak of Scott’s spring, prior to the date of Lockhart’s entry ; and observed, that “ Feeble as this proof is, as to the notoriety of Scott’s spring, at that period ; it is rendered more so, by the testimony” of William Henry, and Henry Lee, which it recited.
It proceeded — After this period (the time of making the survey, in 1785) Scott’s spripg seems to have been notorious, or in other words, knoWn to the generality' of those who were conversant in that quarter of the country.
Without deciding whether Limestone, or Haw creek, were or were not notorious, in 1780 ; or whether Scott’s spring has been identified by the evidence in the record ; it is sufficient to say, that the calls “ on Haw creek, a branch of the Ohio,” and “ about 8 or 9 miles from the mouth of Limestone,” open a wide field for inquiry after Scott’s spring. Nothing but a general knowledge, at the date of the entry, amongst those who were acquainted in that quarter of the country', as to the precise situation ; and of some individual characteristic ofthe spring; could have supported the claim of Lockhart. The cabin is not mentioned in the location, but is a circumstance connected with, and accounting for the name of the spring. If the spring, then, had acquired notoriety by the proper name given to it, this circumstance would have been a good object of description, provided it had circulated as extensively as the name. But this record furnishes no evidence that the natne, or the cause, had circulated generally in 1780.
*288 When Jordan was there, in ■1775, with M’Connell and others, the cabin was not then seen. The spring had no name until 1776, These were, therefore, things which they could not circulate, unless they were after-wards informed of them. There is no evidence that they were so informed, except Jordan, who did not get his information until he was there with Scott, in 1780 ; which he says was the first tinte he had heard it called Scott’s spring. Unless we presume, that when Jordan says he was there with Scott, in 1780, it was before the 20th of April in that year, there is nothing which au-thorises us to say, that any individual ever was at the %pring, after Kenton named it, in 1776, (upon Elfchorn) and before the date of Lockhart’s entry. Kenton says ljte called it Scott’s spring ; but to whom, when., or where, he does not inform us ; but he tells us where he did not do it; and by very strong implication also, when, he did not ; for he says he never was at the spring with any, person, after he sold the improvement, until the fall of the year 1784 ; and then, or in the year following, he thinks he heard the settlers call it Scott’s spring. Kenton was the only person in the country, from 1776 to 1780, who knew where the cabin was, and what spring he called Scott’s. If he communicated this knowledge to others, who had found the spring by his direction, the complainant ought to have made it out by evidence. So he ought to have made it appear, if Jordan was there before April 20th 1780. The silence of Kenton, and Jordan on this subject, and the silence of all the other witnesses as to any notoriety of Scott’s spring until 1784-5, is too great an hiatus of evidence, to be filled by implication.
The testimony forbids tile assertion that Scott’s spring had acquired such notoriety, as that a holder of a warrant could, by any reasonable search, find or distinguish Scott’s spring, in the year 1780, by the description in the entry, or by inquiry in pais.
Wherefore, the entry of Lockhart must be illegal and void.
The subject in the amended bill, this court cannot pass by in silence, although the decree, in that respect, was in favor of the appellant.
After the cause was set for trial, some new ground of equity is caught from depositions, and afterwards am- *289 phfied. This case, in its full dress, is a striking exam-pie to illustrate the experience and policy, which called forth the statute against frauds and perjuries.* The law has wisely required a solemnity of evidence, in certain cases, to protect those who may be accused of breach of good faith, against the frauds of their, accusers. However some judges may have thovight themselves ■justified (in cases reported) to overleap the bounds of evidence prescribed in those cases, and in their eagerness to punish the supposed fraud Of the one party, run the risk of aiding the fraud of the other ; yet no precedent gives countenance to an application to a court of equity, upon the groünd taken by the amended bill.
It is no more than that Baker, knowing of the distinct adverse claim, applied to Craig, to know his opinion of the legal pretensions of the respective claims, separately derived from the commonwealth; And for this compliment to Craig’s judgment and candour, Baker now asks the land;
Baker being apprised of the adverse claim, Craig Was under no moral obligation to give his opinion. But if he gave an answer, it was a voluntary courtesy, which could not uphold art assumpsit (a), much less give a right to demand a release of the legál estate in question, Men are bound to state facts truly, when they speak of them ; and are bound, in many instances, to disclose them, or be barred of a right growing out of them; but ho man is bound by an admission of law, or a mistake of the law, in his judgmeht upon his own right; much less by a mistake of the legality of his adversary’s claim;
If the principle was once admitted; that a better estate could be defeated, released,, or extinguishedby a mistake of opinion ; or confession of law ; or the expressions of an intention by the holder, not to prosecute the right; made by parol; irt the common pursuits of life 5 wé might shortly expect á description of bills in chancey, before unknown; and which might be styled; emphatically; bills to perpetuate “ The mistakes of the night,” and the perjury of witnesses.†
This coui-t is Of Opinioh, there is no equity iñ the amended bill; and that the decree of the circuit court, in *290 that respect, is not erroneous ; but that there is error in so much of the said decree as gives validity to the aforesaid entry of Lockhart.-Decree reversed.

Hob.ioS; a stran. 708» N"1-

 There was cantradlftory fweiririg in the depofitions taken in the caufe,

 See the comedy “ She (loops to conquer, or the miftakes of the night.”